UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) THE SHAWNEE TRIBE, <br><br> Plaintiff, <br><br> v. <br><br> (1) STEVEN T. MNUCHIN, in his official capacity as Secretary of the United Stated Department of the Treasury; (2) UNITED STATES DEPARTMENT OF THE TREASURY; (3) DAVID BERNHARDT, in his official capacity as Secretary of the United States Department of the Interior; (4) UNITED STATES DEPARTMENT OF THE INTERIOR <br><br> Defendants. | Case No. |

**VERIFIED COMPLAINT FOR**
**INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff, The Shawnee Tribe, a federally recognized sovereign Indian nation, by and through its counsel, states and alleges as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1362. The Shawnee Tribe, a federally recognized Tribal government, asserts civil claims arising under the Constitution and laws of the United States, including the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*.

2. Moreover, the allegations of the Complaint give rise to an actual controversy within the meaning of 28 U.S.C. § 2201.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because this lawsuit names an officer and agency of the United States, this action does not involve claims for real property, and The Shawnee Tribe is located in Miami, Oklahoma.

## PARTIES

4. Plaintiff, The Shawnee Tribe, is a federally recognized Tribal government, which provides essential governmental services to its nearly 3,000 enrolled citizens living on and off-reservation. The Shawnee Tribe brings this action to assert and protect its own rights, and the rights of its citizens.

5. Defendants, the United States Department of the Treasury (the "Treasury") and Steven T. Mnuchin ("Secretary Mnuchin"), who has been sued in his official capacity as the Secretary of Treasury, were tasked with distributing funds pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Under the CARES Act, the Treasury and Secretary Mnuchin were directed by Congress to consult with Tribal governments and the United States Secretary of the Interior in order to determine each Tribal government's allocation of the funds provided under the CARES Act. *See* 42 U.S.C. § 801(c)(7). Despite having three separate reliable sources to The Shawnee Tribes' population data – one of which was data submitted directly by The Shawnee Tribe's government at the Treasury's request – the Treasury issued funds based upon the incomplete and unreliable IHBG Metric population data reporting *zero* enrolled tribal members, which was arbitrary and capricious.

6. Defendants, the United States Department of the Interior (the "Interior") and David Bernhardt ("Secretary Bernhardt"), who has been sued in his official capacity as the Secretary of the Interior, was tasked under the CARES Act to consult with Tribal governments to determine each Tribal government's allocation of the funds provided under the CARES Act and, accordingly, they had an obligation to ensure the most accurate enrollment numbers were used in calculating the allocation, which it failed to do. *See* 42 U.S.C. § 801(c)(7).

## RELEVANT BACKGROUND

### A.  Tribal Funding Under the CARES Act

7. The CARES Act, Pub. L. 116-136, 134 Stat. 281 (2020), was signed into law on March 27, 2020, to provide economic relief for, among many other individuals, Tribal, state, and local governments impacted by the COVID-19 pandemic.

8. Pursuant to Title V of the CARES Act, which amends the Social Security Act (42 U.S.C. 301 et seq.), Congress appropriated $8 billion in direct aid to "Tribal governments" specifically ("Title V Funds"). 42 U.S.C. § 801(a)(2)(B).

9. Title V defines "Tribal governments" as "the recognized governing body of an Indian tribe." *Id*. § 801(g)(5).

10. The Shawnee Tribe is a federally recognized Tribal government as defined by the CARES Act, and entitled to receive Title V Funds proportionate to a rational and reasonable tally of its total population.

### B.  After Perfunctory Consultation Treasury Solicits Information and Adopts a Population Based Allocation that is Arbitrary and Unreasonable

11. Congress specifically directed that:

> From the amount set aside under subsection (a)(2)(B) for fiscal year 2020, ***the amount paid*** under this section for fiscal year 2020 ***to a Tribal government shall be the amount the Secretary shall determine***, in consultation with the Secretary of the Interior and Indian Tribes, ***that is based on increased expenditures of each such Tribal government … relative to aggregate expenditures in fiscal year 2019 by the Tribal government*** … and determined in such manner as the Secretary determines appropriate to ensure that all amounts available under subsection (a)(2)(B) for fiscal year 2020 are distributed to Tribal governments.

*Id.* § 801(c)(7) (emphasis added). In short, the Treasury, in consultation with Interior and Indian Tribes, was given authority to determine the amounts Tribal governments should receive, based

3

on their "increased expenditures" relative to fiscal year 2019 aggregate expenditures. The CARES Act did not explicitly authorize the Secretary to adopt a population based formula to determine the amount of funding Tribal governments were to receive under Title V.[1]

12. On April 2, 2020 and April 9, 2020, Treasury and the Interior held telephonic consultation sessions where federal officials heard from representatives of Tribal governments from across the United States. Treasury also solicited written comments from Tribal governments regarding their views on potential methodologies for the allocation of Title V Funds.

13. On April 8, 2020, the superintendent for the Department of the Interior Bureau of Indian Affairs (BIA) Miami agency office contacted the Tribe and specifically requested the Tribe's certified tribal member enrollment population. The Tribe provided the BIA with an enrollment population of 3,021 tribal citizens.

14. Following the conclusion of the consultation period, on April 13, 2020, Treasury published a form entitled "Certification for Requested Tribal Data" on its website. The "Certification for Requested Tribal Data" sought individualized enrollment data from all 574 federally recognized Tribal governments.

15. The Shawnee Tribe provided the requested data to Treasury prior to Treasury's April 17, 2020, deadline. The Shawnee Tribe timely certified Plaintiff's Actual Tribal Enrollment Metric of 3,021. *See* Exhibit A.

16. On May 5, 2020, Secretary Mnuchin and Secretary Bernhardt issued a joint press

---

[1] *Compare with* 42 U.S.C. 801(c)(8). Although Congress mandated that Treasury use United States Census Bureau population data for determining the distribution of Title V Funds to States and units of local government (42 U.S.C. § 801(c)(8)), no such requirement exists for the distribution of funds to Tribal governments. Instead, Tribal governments are treated as a distinct category from state and local governments in Title V. *See, e.g., id.* at § 801(a)(1) (referencing payments to "States, Tribal governments, and units of local government").

release announcing the agreed upon plan for allocating the Title V Funds.[2]

17. According to the jointly agreed upon plan, Treasury decided to split the Title V funds into two allocations. The first allocation to Indian Tribes would be from sixty percent of the Title V Funds, or $4.8 billion, "based on tribal population" ("Population Award") because "Tribal population [was] expected to correlate reasonably well with the amount of increased expenditures of Tribal governments related directly to the public health emergency, such as increased costs to address medical and public health needs."[3]

18. For tribes with a population of less than 37 members, a minimum payment of $100,000 would be awarded.[4]

## C. Without consultation with the Tribes, Treasury uses IHBG's Race-Based Data containing inaccurate population data.

19. Despite The Shawnee Tribe providing enrollment data of over 3,000 members only weeks earlier, the Treasury elected to allocate the Population Award based "on population data used in the distribution of the Indian Housing Block Grant," ("IHBG"), under the Department of Housing and Urban Development ("HUD").[5]

20. According to Treasury, it adopted the IHBG data because it was purportedly a "reliable and consistently-prepared" metric.

---

[2] U.S. Dept. of the Treasury, Joint Statement by Treasury Secretary Steven T. Mnuchin and Secretary of the Interior David L. Bernhardt on Distribution of Coronavirus Relief Fund Dollars to Native American Tribes (May 5, 2020), https://home.treasury.gov/news/press-releases/sm998 (last visited June 16, 2020)

[3] U.S Dept. of the Treasury, Coronavirus Relief Fund Allocations to Tribal Governments, https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Tribal-Allocation-Methodology.pdf, (last visited June 16, 2020), p. 2.

[4] *Id.*, p. 3.

[5] U.S. Dept. of the Treasury, Joint Statement by Treasury Secretary Steven T. Mnuchin and Secretary of the Interior David L. Bernhardt on Distribution of Coronavirus Relief Fund Dollars to Native American Tribes, https://home.treasury.gov/news/press-releases/sm998, (last visited Jun. 16, 2020).

21. Under the IHBG race-based data, twenty-five Tribal governments, including The Shawnee Tribe, are listed as having a population of *zero*, a practical impossibility ("IHBG Race-Based Data").[6]

22. Within the same IHBG data, HUD reports that The Shawnee Tribe has *2113 enrolled members* ("IHBG Enrollment Data"). *See* Exhibit B.

23. Although HUD maintains enrollment population data for tribes, it is for the sole purpose of calculation and distributing HUD funds, which The Shawnee Tribe does not receive and is, thus, erroneously undercounted.

24. Treasury made the determination to use IHBG Race-Based Data even though the BIA also maintains accurate enrollment numbers for tribes, and in fact sought to directly confirm the correct enrollment number with the Shawnee Tribe.[7]

25. At no time prior to the Treasury's May 5, 2020 announcement did it give The Shawnee Tribe or any other tribal government notice that it might utilize the ill-fitting IHBG Race-Based Data, rather than the accurate population data solicited directly from the tribes, or readily available data through the IHBG Enrollment Data and the BIA.

**D.   Due to the Obvious Error in Population, the Shawnee Tribe Receives the Minimum Funding and Seeks to Correct the Error.**

26. The same day that Treasury released its allocation plan, on May 5, 2020, it announced the first round of funding consisting of $4.8 billion. Based on the Treasury's Population Award calculations, The Shawnee Tribe received only $100,000, which was the minimum allocation based on the IHBG Race-Based Data showing it had zero population.[7]

---

[6] U.S Dept. of the Treasury, Coronavirus Relief Fund Allocations to Tribal Governments, https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Tribal-Allocation-Methodology.pdf, p. 2 (last visited June 16, 2020).
[7] *Id.*, p. 3.

27. Even though The Shawnee Tribe has an official enrollment of 3,021 tribal members, and even though HUD has an enrollment number of 2,113 for the Shawnee Tribe, the IHBG "formula" has a population of zero for the Shawnee Tribe. Because of this obviously erroneous population amount, the Shawnee Tribe only received $100,000 for its "Population Award."

28. The Shawnee Tribe immediately sought to determine why Treasury used the obviously incorrect population number.

29. On May 13, 2020, on a conference call with Tribal leaders and Dan Kowalski, Senior Counselor to Secretary Mnuchin, Chief Ben Barnes raised a question about how it was possible for a tribe to be listed as having zero citizens. Chief Barnes further asked if there was a challenge process to correct what was clearly a clerical or accounting error. Mr. Kowalski's response was that he understood the issue but that there was no recourse for the Tribe.

30. The Shawnee Tribe began pursuing other potential administrative recourse, including outreach communications to Mr. Kowalski, White House staff, and Interior staff.

31. Upon information and belief, the various staff members conveyed to the Tribe and its representatives that Treasury realized its error and was working on a potential solution.

32. The Shawnee Tribe also enlisted the support of congressional representative. On May 28, 2020, several members of Congress sent a letter to the Secretary seeking a resolution to this clear error. *See* Exhibit C.

33. Upon information and belief, Representative Mark Wayne Mullin and his staff spoke to Mr. Kowalski or his staff on multiple occasions. On or about June 8, 2020, Rep. Mullin offered a potential solution for the Tribe. Mr. Kowalski advised Rep. Mullin that he would take the solution to Secretary Mnuchin.

34. Upon information and belief, Treasury responded to Rep. Mullin on June 10, 2020

that they acknowledged some tribe's populations were zeroed out and other's populations were drastically reduced. Nonetheless, Treasury decided they would not distribute any additional money to the negatively impacted tribes. Instead, Treasury advised Rep. Mullin that ***if a tribe has an issue with their amount (or lack thereof), they should file a lawsuit.***

35. On June 12, 2020 Treasury announced the methodology for the second allocation of funds.[8] Because of several pending lawsuits against Treasury, Treasury decided to withhold approximately $679 million of the Title V funds in reserve, as a policy matter, "'to resolve any potentially adverse decision in litigation' over Defendant's methodology for calculating disbursements from CARES Act appropriation for Tribal governments."[9]

36. However, on June 15, the District Court for the District of Columbia ordered the Secretary to disburse these reserved funds no later than June 17, 2020. *See* Exhibit D, Order in *Agua Caliente Band of Cahuilla Indians et al. v. Mnuchin*, 20-cv-01136 (APM), pp. 2-3.[10]

37. On information and belief, Treasury is in the process of disbursing the remaining $679 million of Title V Funds, as it has been ordered to do so and it is expected to do so imminently.

**E.     Treasury's Clear Error and Unwillingness to Correct Its Error Prevents the Tribe From Receiving its Fair Share of the Title V Fund and Hinders the Tribe's Ability to Respond to the COVID-19 Pandemic**

38. Treasury clearly erroneous and thus unreasonable reliance on the IHGB Race-

---

[8] U.S Dept. of the Treasury, Tribal Allocation Methodology for Second Distribution, https://home.treasury.gov/system/files/136/Tribal-Allocation-Methodology-for-Second-Distribution.pdf (last visited June 16, 2020).
[9] Id, pg. 2
[10] Though the court in *Prairie Band Potawatomi Nation v. Mnuchin* has ordered distribution of the remaining $679 million, it has done so because "[a]t present, there is no court order that prevents the Secretary from releasing the remaining $679 million in Title V funds to Tribal governments. That amount is being withheld of the Secretary's own accord." Exhibit D, pp. 2-3.

Based Data showing The Shawnee Tribe had a zero population[11] and awarded it $100,000 instead of the approximately $6 million or more[12] it would have been entitled to had the enrollment data readily available from The Shawnee Tribe itself, the BIA or available *within the same HUD document* Treasury relied upon been used.

39. Treasury's data set grossly undercounted The Shawnee Tribe's total enrolled population by nearly 3,000 members, or approximately 98 percent, assuming the best case scenario that it accounted for at least 37 members.

40. The Shawnee Tribe has incurred significant medical and public health expenses in responding to the devastation resulting from the COVID-19 pandemic, and it continues to provide essential services to its citizens residing on-reservation and off-reservation.

41. As such, Treasury's allocation formula which grossly understates The Shawnee Tribe's population – despite readily available and reliable data showing otherwise – is arbitrary and capricious, and has caused injury to The Shawnee Tribe by reducing the Tribe's proportionate share of the Population Award.

**COUNT I**
**(Declaratory Relief,**
**5 U.S.C. § 706, and 28 U.S.C. §§ 2201-2202)**

42. The Shawnee Tribe restates and realleges the preceding paragraphs as if fully stated herein.

43. The Administrative Procedures Act ("APA") authorizes judicial review of agency actions. 5 U.S.C. § 702.

---

[11] If Treasury did, in fact, award Title V funds to The Shawnee Tribe based on 37 members or any other number, it would be unsupported by any data whatsoever.

[12] Because the Treasury's remaining formula is based on a pro rata share of money received by all tribes, and the calculations and population figures for other tribes are currently unknown, The Shawnee cannot determine the exact amount it would be entitled to Title V funds had the correct enrollment numbers been used.

44. The APA allows a Court to set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A).

45. Treasury's and Interior's joint decision to adopt the IHBG Race-Based Data for the basis of calculating the Population Award was arbitrary and capricious under the APA.

46. Treasury's and Interior's rationale for adopting the IHBG Race-Based Data was based on inaccurate inferences, including: (i) that the IHBG is "reliable and consistently-prepared"; (ii) that IHBG captures Tribal population; (iii) that Tribal governments are familiar with and scrutinize the IHBG; and (iv) that the IHBG data's reliance on Census Bureau data is a benefit for the purposes of disbursement of Title V Funds.

47. The IHBG data is facially flawed, as it contains population values for The Shawnee Tribe which are objectively erroneous; relies upon race-based population that is not an accurate measurement of essential services the Shawnee tribal government provides to its citizens; it fails to account for the Tribe's citizens who reside outside of the geographic area used by HUD to determine Tribal housing needs; and it fails to account for the Tribe's lack of participation in the HUD program or the census gathering.

48. Even if Treasury's reliance on and use of the IHBG formula for calculating the Population Award was not arbitrary and capricious, in light of the plainly wrong population number of zero for Shawnee Treasury's failure to use readily available and accurate data documenting The Shawnee Tribe's actual population was clearly erroneous and unreasonable.

49. Treasury had access to The Shawnee Tribe's population data from three sources: (1) the Bureau of Indian Affairs, with which it consulted; (2) The Shawnee Tribe itself, at Treasury's request; and (3) the IHBG data showing that The Shawnee Tribe's population was at

least 2113.

50. Treasury had this data, yet it ignored it and relied upon the IHBG Race-Based Data showing The Shawnee Tribe had zero members.

51. Aside from being patently false and a practical impossibility, the IHBG Race-Based Data showing The Shawnee Tribe has zero members was contradicted by data within the same document, which Defendants ignored.

52. Despite its knowledge and admission of such clear error, Treasury also arbitrarily and capriciously ignored the Shawnee Tribe's and Rep. Mullin's efforts over 30 days to correct the clear error, and advising the Tribe to sue instead.

53. The APA also directs a Court to set aside agency actions that fail to observe procedure required by law. 5 U.S.C. § 706(2)(A)

54. Title V of the CARES Act granted Treasury the discretion to determine an appropriate method of allocating Title V funds to Tribal governments only after consulting with tribal governments and the Interior. 42 U.S.C. § 801(7).

55. Treasury never consulted with tribal governments to use IHBG Race-Based Data as a basis for awarding funds, particularly where Tribal governments had just submitted their enrollment data to Treasury, per its request. Tribal governments were, therefore, deprived of a reasonable opportunity to consult on the weaknesses of the IHBG Race-Based Data.

56. Pursuant to the CARES Act, the Interior was required to consult with Treasury to determine the appropriate allocation formula.

57. The Interior also had reasonable notice that the IHBG Race-Based Data was an improper source of population data, upon which Treasury could base its Population Award; thus,

it had a duty under its general trust obligations and the CARES Act to investigate and ensure the use of the proper population data.

58. Secretary Bernhardt and the Interior failed to do so.

59. For all the above reasons, Defendants actions and inactions are arbitrary, capricious, an abuse of discretion or otherwise contrary to law and should be set aside.

## COUNT II
### (Injunctive Relief Against Secretary Mnuchin and Treasury)

60. The Shawnee Tribe restates and realleges the preceding paragraphs as if fully stated herein.

61. Pursuant to the CARES Act, The Shawnee Tribe is entitled to a proportionate share of the Title V Funds.

62. The Shawnee Tribe has incurred significant medical and public health expenses in responding to the devastation resulting from the COVID-19 pandemic and the Tribe continues to provide essential services to its citizens residing on-reservation and off-reservation.

63. The Shawnee Tribe is likely to prevail under APA because Treasury's selection of the allocation formula was arbitrary and capricious, as alleged above.

64. Even if it were not, Defendants ignored readily available data in calculating the Population Award, which grossly understated The Shawnee Tribe's population by nearly 3,000 members or approximately 98 percent.

65. This gross understatement has resulted in injury to The Shawnee Tribe by reducing the Tribe's proportionate share of the Population Award.

66. Further, Treasury refused to correct its known and admitted clear error without the filing of this law suit.

67. Treasury's pending disbursement of the remainder of the Title V Funds, which was ordered to occur by June 17, threatens The Shawnee Tribe with imminent, irreparable, injury as it will exhaust the Title V Funds and leave the Tribe without an adequate remedy.

68. Consequently, The Shawnee Tribe is entitled to a temporary restraining order pending a hearing for preliminary injunction enjoining Secretary Mnuchin and Treasury from distributing any further portion of the reserved $679 million intended to resolve the amount of funds for Oklahoma tribes, any further portion of any remaining Title V funds, or at least $12 million, until such time as Secretary Mnuchin and Treasury can determine the appropriate amount of funding based on The Shawnee Tribe's accurate tribal member population.

## **PRAYER FOR RELIEF**

Wherefore, The Shawnee Tribe respectfully requests the Court:

1. Enter judgment pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706 declaring that Treasury's and Interior's use of the IHBG data to distribute Title V funds was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and procedural requirements;

2. Enter judgment pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706 declaring that Treasury's failure to correct the obvious population data error for the Shawnee Tribe in the IHBG formula before the funds were distributed under the Population Award, and Treasury's ongoing refusal to correct the known and obvious population data error was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the CARES Act;

3. Enjoin Treasury and Secretary Mnuchin from distributing, disbursing, or otherwise depleting any further that portion of the reserved $679 million intended to resolve the amount of funds for Oklahoma tribes, any further portion of any remaining Title V funds, or that

amount that would be reasonably available to Oklahoma tribes but no less than $12 million, until such time as The Shawnee Tribe's accurate population data is used and funds are distributed to The Shawnee Tribe consistent with the purpose of the CARES Act; and

4. Award The Shawnee Tribe its reasonable attorney fees, costs, and such other and further relief as the Court deems just and proper.

Dated this 18th day of June, 2020.

        /s/ Gregory Bigler
Gregory Bigler (OK Bar No. 11759)
BIGLER LAW
P. O. Box 1927
Sapulpa, Oklahoma 74067

Pilar M. Thomas (pro hac vice pending)
QUARLES & BRADY LLP
One South Church Avenue, Suite 1800
Tucson, Arizona 85746

Nicole L. Simmons (pro hac vice pending)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391

*Attorneys for Plaintiff*

## VERIFICATION

Chief Ben Barnes, declares as follows:

I am the Chief of The Shawnee Tribe. As such, I am authorized to make this Verification for and on behalf of The Shawnee Tribe. I have read the foregoing **VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** and know the contents thereof, and, I attest that such contents are true to the best of my actual knowledge, information, and belief. As to those matters stated therein upon information and belief, I believe them to be true.

THE SHAWNEE TRIBE

By: _____