## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE SHAWNEE TRIBE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-290 |
| | ) | |
| STEVEN MNUCHIN, et al., | ) | |
| Defendants. | ) | |

### <u>OPINION AND ORDER</u>

This matter comes before the Court on Plaintiff Shawnee Tribe's motion for a preliminary

injunction (Doc. 3) and the defendants' motion for transfer of venue (Doc. 20).

## I.    BACKGROUND

In Title V of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act),

Congress allocated $8 billion for "Tribal governments" to help defray the cost of dealing with the

COVID-19 pandemic. Congress called for the money to be distributed based on each tribe's

"increased expenditures" but left it up to the Secretary of the Treasury to determine how this would

be calculated:

> [T]he the amount paid under this section for fiscal year 2020 to a Tribal government
> shall be the amount the Secretary shall determine, in consultation with the Secretary
> of the Interior and Indian Tribes, that is based on increased expenditures of each
> such Tribal government (or a tribally-owned entity of such Tribal government)
> relative to aggregate expenditures in fiscal year 2019 by the Tribal government (or
> tribally-owned entity) and determined in such manner as the Secretary determines
> appropriate to ensure that all amounts available under subsection (a)(2)(B) for fiscal
> year 2020 are distributed to Tribal governments.

42 U.S.C. § 801. Congress gave the Secretary until April 26, 2020—30 days from the passage of

the Act—to distribute the money.[1]

---

[1]    The Act set a deadline of "not later than 30 days after March 27, 2020" i.e., by April 26,
2020. § 801(b)(1).

After soliciting input from tribes, the Treasury Department announced its distribution methodology on May 5, 2020.[2] Effective immediately, the Department said, it would begin releasing an initial tranche of $4.8 billion, 60 percent of the total available. Because actual expenses could not be predicted quickly and could favor tribes that run businesses, the first tranche was being distributed based on each tribe's population as estimated by the Department of Housing and Urban Development for its Indian Housing Block Grant program.[3] A subsequent round of funding would distribute the remaining 40 percent based on employment data collected from the tribes, the Treasury Department said.

The Tribe contends that the Secretary's method for distributing the initial tranche of funds was arbitrary and capricious under the Administrative Procedure Act (APA) because the Department relied on data it knew to be faulty when calculating each tribe's pro rata share, ignoring other available data sets that were more accurate. Tribe claims that, because it does not receive IHBG funds, the HUD data shows it to have a population of zero rather than 3,021, its actual enrollment. As a result of the alleged error, the Tribe received the minimum payment of $100,000 rather than its rightful pro-rata share, which the Tribe estimates to be not less than $12 million. The Tribe seeks an order directing the Secretary to withhold from the Department's second round of disbursements (roughly $3.2 billion), an amount of money equal to that the Tribe would have received had the Department relied on more accurate data.

This suit comes on the heels of three others, filed in the District Court for the District of Columbia, related to the Treasury Department's handling of the Title V funds. In *Confederated*

---

[2]    U.S Dep't. of the Treasury, Coronavirus Relief Fund Allocations to Tribal Governments (May 5, 2020), http://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Tribal-Allocation-Methodology.pdf.

[3]    *Id.*

*Tribes of the Chehalis Reservation v. Mnuchin*, a group of tribes challenged Treasury's plan to include Alaska Native regional and village corporations ("ANCs") in its distribution. ANCs, the tribes argued, are not "Tribal governments" under the CARES Act. *See Confederated Tribes of the Chehalis Reservation v. Mnuchin*, No. 20-CV-1002 (APM), 2020 WL 3489479 (D.D.C. June 26, 2020), *appeal docketed*, No. 20-5205 (D.C. Cir. July 14, 2020). Ultimately, the court held that ANCs are "Tribal governments" for the purposes of the CARES Act but directed Treasury to withhold the money earmarked for them until the matter is resolved on appeal. *See Confederated Tribes*, No. 20-CV-1002, ECF No. 107.

In *Prairie Band Potawatomi Nation v. Mnuchin*, a tribe sought to enjoin the Treasury Department from disbursing the second tranche of CARES Act funds, arguing that the Department's reliance on faulty population data caused it to short the tribe by more than $7 million. *Prairie Band Potawatomi Nation v. Mnuchin*, No. 20-CV-1491 (APM), 2020 WL 3402298 (D.D.C. June 11, 2020). The court denied the requested relief, citing the tribe's doubtful prospects for success on the merits, its undue delay in bringing the suit, and harm to the public interest caused by further delaying disbursement of the remaining funds. *Id.* at *2–3.

Finally, in *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, a group of tribes sought an injunction ordering the Treasury Department, which had blown by Congress's disbursement deadline, to release the funds under its control. *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-CV-1136 (APM), 2020 WL 3250701 (D.D.C. June 15, 2020). Treasury had sought to set aside some $679 million to resolve claims by tribes that had lost out due the Department's reliance on HUD's population estimates, but the court, citing its decision in *Prairie Band*, ordered the Department to disburse all Title V funds except those on hold due to the litigation in *Confederated Tribes*. *See Agua Caliente*, 2020 WL 3250701, at *1 & n.1, *4.

After the court's order in *Agua Caliente*, the government began distributing the second tranche of Title V funds. As of June 25, 2020, all that remained was (1) $1.4 million that had been held up due to payment processing issues, and (2) the money earmarked for the ANCs, which remains subject to the D.C. court's injunction in *Confederated Tribes*. *See Agua Caliente*, No. 20-CV-1136, ECF. No. 45.

## II.   DISCUSSION

The defendants ask the Court to transfer this case to the D.C. court, or, in the alternative, to deny the Shawnee Tribe's request for a preliminary injunction restraining Treasury from disbursing the remaining Title V funds. For the reasons explained below, the Court declines to address the merits of the Shawnee Tribe's application for a preliminary injunction. Under the first-to-file rule, the case should be transferred to the D.C. district court.

"[U]nder the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1165 (N.D. Okla. 2010) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)). Three considerations determine whether the rule applies: "(1) the chronology of actions; (2) the similarity of parties, and (3) the similarity of issues." *Id.* at 1168.

The defendants urge the Court to apply these factors to all three of the Title V cases summarized above, but only *Confederated Tribes* would seem to be relevant to a first-to-file inquiry. The rule applies "when related cases are *pending* before two federal courts." *Cadle*, 174 F.3d at 603 (emphasis added). Consequently, "a number of courts have concluded that the first-to-file rule has no application where the first-filed case is no longer pending. *Hunter v. Agility Energy, Inc.*, No. 18-CV-618 TS-PMW, 2019 WL 6118424, at *2 (D. Utah Nov. 18, 2019) (collecting

cases). Because the D.C. court has decided both *Prairie Band* and *Agua Caliente*, the first-to-file rule simply does not apply to them.

*Confederated Tribes*, however, remains active. In *Confederated Tribes*, the court ruled that ANCs were eligible for Title V funds but ordered Treasury to set aside the funding it had earmarked for them until the D.C. Circuit decided the case on appeal. That injunction remains in place.

Even when the inquiry is limited to *Confederated Tribes*, all three of the first-to-file rule's factors weigh in favor of transfer. The chronology of the actions is not in dispute: the plaintiffs in *Confederated Tribes* brought their suit in the D.C. district court long before Shawnee Tribe filed its suit here in the Northern District of Oklahoma. The parties are also similar. The plaintiffs in *Confederated Tribes* were, like the Shawnee, due to receive Title V funds, and, like the Shawnee, they sued Mr. Mnuchin in his official capacity as Secretary of the Treasury. Finally, the issues in this case substantially overlap with the issues in *Confederated Tribes*. The Shawnee's suit is effectively a collateral attack on the injunction granted by the D.C. court in *Confederated* Tribes, as Shawnee's requested relief would necessarily come at the expense of the ANCs.

These are precisely the type of problems that the first-to-file rule seeks to avoid.

> Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order 'to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'

*Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477 (10th Cir. 1999) (quoting *Sutter Corp. v. P & P Indus., Inc.,* 125 F.3d 914, 917 (5th Cir.1997)). Because the first-to-file factors are met, and because the Court cannot grant the requested relief without "trenching upon the authority" of its sister court in Washington D.C., the Court declines to exercise its jurisdiction to hear this matter.

**III.    Conclusion**

For the reasons explained above, the defendants' motion for transfer of venue (Doc. 20) is

**granted.** The Clerk of Court is hereby ordered to transfer the case to the District Court for the

District of Columbia.

SO ORDERED this 28th day of July, 2020.

_____

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT